THE PEOPLE, *ex rel.* Dickinson, *vs.* THE BOARD OF SUPER-
VISORS OF LIVINGSTON COUNTY and others.

The office of a writ of certiorari is to bring up, for review in the superior
court, the record of an inferior court, or of a tribunal exercising judicial
functions. It is not the office of the writ to bring up the proceedings of
any other bodies or classes of public officers.

A board of supervisors, in passing resolutions to provide for raising money
upon the credit of their county, for the use of said county, or upon the
credit of any town thereof, for the use of such town, for the purpose of paying
bounties to volunteers into the military or naval service of the United
States, under the authority given by the act of February 8, 1864, (*Laws,
ch.* 8,) are not acting in a judicial, but in a purely legislative capacity.

The supreme court can neither affirm nor reverse, or set aside, mere initia-
tory resolutions, of that character, or make any order in respect to them,
upon certiorari.

A resolution passed at a town meeting, providing for the raising of money on
the credit of the town, to pay bounties to volunteers, is not a judicial act,
and can not be affirmed, or reversed or set aside, on certiorari.

A certiorari will not lie to bring up the incipient resolutions or proceedings
upon which a tax may ultimately be based, before any tax is laid, or any
final adjudication or determination is had upon the matter.

A RETURN being made to the writ of certiorari issued in
this action, and a motion being made by the respondent
to quash such writ, the argument upon the return and the
motion to quash were brought and heard together. The
facts of the case sufficiently appear in the opinion of the
court.

   *H. Chalker* and *Geo. F. Danforth,* for the relator.

   *A. J. Abbott* and *T. R. Strong,* for the respondents.

*By the Court,* E. DARWIN SMITH, J. The writ of certio-
rari in this case is directed to the board of supervisors of Liv-
ingston county, to Alfred Bell, supervisor of the town of
Nunda, and to Whitman Metcalf, town clerk of said town. It
recites that the said board of supervisors, on the 3d day of
August, 1864, passed a certain resolution providing among

other things that the treasurer of said county issue the bonds of said county to each supervisor of the county, or borrow money on said bonds for such supervisor, to pay a bounty not exceeding $300 to each recruit that shall be mustered into the service of the United States, to the credit of their respective towns, for three years, and not exceeding $200 to each recruit mustered for one year. That the board of supervisors assess the bonds or money so furnished to the towns respectively; that each person furnishing a substitute shall be entitled to said bounty, and each national guard or militiaman shall be entitled to such fractional part of any town bounty corresponding to the fractional part of any credit that may accrue to such town in consequence of actual services of such guard or militiaman; and also reciting that on the 2d day of September, 1864, the said board, at a meeting duly convened, passed another resolution authorizing each town in said county to increase its bounty to a sum not exceeding $1000, and the treasurer of the county to issue the bonds of the said county to each supervisor, subject to the regulations contained in the aforesaid resolution passed August 3, 1864; and also reciting certain proceedings for the calling and holding of two special town meetings in the said town of Nunda, called for the purpose of passing resolutions in conformity with the foregoing resolution to raise money on the credit of such towns to pay bounties to volunteers, at one of which meetings the voters refused to authorize the payment of $1000 to volunteers, and at the second meeting the voters voted to authorize the supervisor to receive bonds from the county treasurer to pay a bounty of $900 to each volunteer on the credit of said town, and referring to the said resolutions. Said writ required the board of supervisors and the supervisor and town clerk of the said town of Nunda to make return of said resolutions, and their proceedings thereupon. The return to the writ accordingly sets forth a copy of the resolutions passed by the board of supervisors and by the town meeting in Nunda last held, and the proceedings con-

nected therewith, corresponding in terms with the resolutions recited and referred to in the writ.

A common law certiorari is a judicial process directed to an inferior court or tribunal, and brings up simply the record of the proceedings of such inferior tribunal. Nothing is before us, therefore, upon this writ, except simply the resolutions of the board of supervisors, and the resolution passed at the special town meeting in Nunda, and the calls or notices and requests to call such town meeting.

The office of the writ of certiorari is to bring up for review in the superior court the record of an inferior court or of a tribunal exercising judicial functions. It is not the office of the writ to bring up the proceedings of any other bodies or classes of public officers. Courts are instituted to decide judicial questions, and superior courts review the record and proceedings of inferior courts, or of officers or tribunals acting in a judicial capacity, and in no other.

In passing the resolution brought before us on this writ, the board of supervisors were not acting in any judicial capacity. They were acting purely in a legislative capacity. They were given by section 22 of the act of February 8, 1864, chapter 8, a large legislative authority and discretion.

They are expressly authorized and empowered, at any meeting of said board duly called and convened, to adopt resolutions to provide for raising money upon the credit of their county for the use of said county, or upon the credit of any town thereof, for the use of such town, for the purpose of paying bounties to volunteers into the military or naval service of the United States. It was, within this grant of power, a question addressed to the discretion of the board of supervisors and confided to their judgment by the legislature, to determine whether they would raise any money, and if so how much, and in what manner they would raise such money, for the purpose specified in such act. It was not a question of a judicial nature, but one of a clear legislative character.

The resolutions passed by the board were acts or measures

The People *v.* Supervisors of Livingston County.

in the execution of their legislative power over the subject. They had nothing of the character of a judicial record or of judicial proceedings. If the board exceeded the power conferred upon it, the resolutions were simply invalid; but it seems to me that it would be quite extraordinary for this court to attempt to review them, or to render any judgment to affirm, or reverse or set them aside, and this would be the only judgment we could render upon the proceedings before us. If there be any defect or excess of power in passing the resolutions, no one as yet is injured by them; and the board may not proceed to carry them into effect. They may at a subsequent meeting rescind or modify them. But if they should not do so, assuming that then the resolutions were unauthorized and void, when they proceed to carry them into effect it will be time enough for the relator to apply for appropriate relief or redress; but I do not think we can either affirm or reverse or set aside mere initiatory resolutions like these, or make any order in respect to them, upon certiorari. It is undoubtedly true that the writ has been allowed and retained in cases not strictly judicial. In some cases the power of the court to award the writ, and to review the proceedings of courts and officers clothed with power to affect the rights and property of the citizen, has been asserted in terms quite sweeping and extensive. Such are the cases of *Lawton* v. *Com'rs of Highways*, (2 *Caines*, 182,) and *LeRoy* v. *The Mayor of New York*, (20 *John.* 436, *and* 16 *id.* 49, 50.) Following these cases, this court, as organized under the former constitution, for many years seemed inclined to grant the writ with great looseness, and for the review of most kinds of official, ministerial, executive and administrative acts, and the proceedings of municipal corporations. But this course of decisions came pretty much to an end with the cases of *The People* v. *The Mayor of New York*, (2 *Hill*, 10,) and *In the Matter of Mount Morris Square*, (*Id.* 14.) In the former of these cases Judge Bronson said, "that a writ of certiorari only lies to inferior courts and officers who exer-

cise judicial powers;" and he disapproved of the case in the *20th of Johnson*, and of all that class of cases where the writ had been held to lie to review the proceedings of municipal corporations, in laying out streets or making provision for public improvements, and the proceedings of ministerial officers and public bodies. But in the case of the *Matter of the Mount Morris Square*, Judge Cowen examined the question with great care, and with his accustomed research. He says, "the writ lies to inferior *courts* only," and cites *Bacon's Ab. Certiorari*, 13, and *Case of Rex* v. *Lloyd*, (*Cald. Cas.* 309,) where the writ was quashed because the order it was brought to review was not *judicial*. Judge Cowen discusses the question with much ability, and I think shows quite clearly that it was a departure from principle ever to have allowed this writ to go to review the proceedings of corporations and other public bodies or officers not acting judicially, and that the proper office of the writ is to review simply *judicial decisions* or determinations. He admits that the writ may go to assessors and other officers having power to assess and issue a warrant to levy money, for they are to a certain extent *judges*, and their determinations judicial; but he held "that this was outside of the cases which favor the writ." In 15 *Pick.* 243, the writ was disallowed, the court saying the acts sought to be inquired of were not judicial. The same view is asserted in the case of *The People* v. *the Board of Health of New York*, (33 *Barb.* 346,) in which the writ was quashed, Judge Ingraham saying, in giving the opinion of the court, "that he could not adopt the conclusion that it is in any sense proper to review the legislation of any body having authority to legislate, even when in the course of such legislation they might exceed the powers vested in them."

The writ has recently been allowed, without question, to correct errors of assessment in New York, in the cases of *The People* v. *Commissioners of Taxes for New York*, (23 *N. Y. Rep.* 192;) *The same, ex rel. Hoyt*, v. *The same*, (*Id.* 224,) and *The same, ex rel. Bank of Commerce*, v. *The*

*same,* (26 *id.* 163.)   In this class of cases the act or decision of the assessors is regarded as *judicial,* and upon this ground the writ was allowed to go, and was sustained.   The same objection applies to the proceedings of the town meeting of Nunda, and the resolution passed at such meeting.   The resolution passed at such meeting was not a judicial act.   This court can not appropriately affirm or reverse or set aside a mere resolution of a town meeting not resulting in any judicial action or decision.

The writ to the commissioners of taxes in New York was allowed while the roll was before them, after the final adjudication upon the assessment in question, and while they had the power to amend it, and conform it to the judgment of the court.   The judgment rendered by the court of appeals in these cases was that the judgment should be reversed, (meaning the judgment of the supreme court affirming the assessment,) and that "the proceedings be remitted with a direction to correct the assessment roll."   To sustain the writ, there has been quite a tendency to enlarge the sphere of judicial acts, and to regard almost every kind of official act requiring or involving the exercise of judgment or discretion as a judicial act.   But this, I think, is a mistake.   There is scarcely an act of any public officer or body, or of persons clothed with special powers by or under the authority of law, that does not require and involve more or less discretion.   It is simply absurd to call all such acts *judicial,* and apply to them the principles which govern the review of the proceedings of *courts* and of judicial officers.

But if a writ of certiorari will lie to a board of supervisors—and I think it would upon the same principle that it goes to assessors—this writ is at least premature.   The writ can not go to a court or inferior tribunal till the proceedings instituted or pending in such court or tribunal are completed or ended.   It will only lie to bring up the *final adjudication* of such court or tribunal.   (20 *John.* 80.   *Lynde* v. *Noble,* 3 *Abb.* 194.   26 *Barb.* 637.)

The final determination of assessors fixes the amount and valuation of property upon which a taxpayer is to be taxed. It is an *adjudication* after examination of the person to be assessed, if he appears before them, in respect to the extent of the property possessed by him and liable to taxation. So when a board of supervisors finally assess, lay and levy a tax, it is an adjudication that the persons named in the assessment roll are liable to pay the tax assessed to him, and it is a final judgment or adjudication against him, on the subject. To review such final judgment or adjudication, I have no doubt that a certiorari will lie. Such writ will bring up as part of the record all the proceedings which enter into the final adjudication. If the supervisors in this case had proceeded to assess, lay and levy a tax upon the taxpayers of Livingston county, under the resolutions passed August 3 and September 2 aforesaid, a writ of certiorari would clearly have lain to them. Such writ would have brought up their resolutions for review, and all other resolutions, acts or proceedings entering into and forming part of the judgment or adjudication, or which in any manner became part of the jurisdictional facts upon which such adjudication was founded. The question whether a writ of certiorari shall issue in such case would be one addressed to the discretion of the court alone. It is not a writ of right, and should not be granted to boards of supervisors to remove proceedings in assessing the general town and county taxes. (*The People* v. *The Supervisors of Alleghany*, 15 *Wend.* 198. *The same* v. *The Supervisors of Queens*, 1 *Hill*, 200.) But I have no doubt of the power. Quite clearly the writ will not lie to bring up the incipient resolutions or proceedings upon which a tax may ultimately be based, before any tax is laid or any final adjudication or determination is had upon the matter. The court clearly can not reverse, quash or set aside proceedings not before it, and can not adjudge proceedings invalid which have not been had. It can not anticipate the decision or adjudication of the subordinate tribunal before whom special

proceedings are pending, and annul them in advance. For these reasons I think the writ of certiorari issued in this case should be quashed.

[MONROE GENERAL TERM, December 23, 1864. *J.* ❧ *Smith, Welles* and *E. Darwin Smith,* Justices.]