IN THE MATTER OF THE SALINE COUNTY SUBSCRIPTION, PHILIP H. THOMPSON *et al.*, Petitioners.

1. *Certiorari will not lie, except to review judicial proceedings.*— The action of a County Court in subscribing to railroad stock and issuing bonds for payment thereof is a discretionary and not a judicial proceeding, and therefore not the subject of review by writ of *certiorari* from the Supreme Court.

*Petition of certiorari.*

*W. B. Napton*, for petitioners.

This court may review the subscription of the County Court, on *certiorari*. The writ is addressed to a court, proceeding under a special law, and judicially construing that law erroneously, and there is no remedy by appeal on error. (Hannibal and St. Joseph R.R. Co. v. Morton, 27 Mo. 317; Redfield on Railroads, ch. 27, § 202, and cases there cited; Robinson v. Board of Supervisors, 16 Cal. 208, and authorities cited in that case; Gillespie v. Broas, 23 Barb. 370.) The act of the County Court was not legislative nor executive, nor was it the exercise of a mere discretion not subject to the review of any other tribunal.

*J. B. Henderson*, and *Sharp & Broadhead*, for respondent.

A *certiorari*, at common law, lies only to inferior courts, and officers exercising judicial powers. (People *ex rel.* Agnew *et al.* v. Mayor, etc., 2 Hill. 9.) The writ will not lie to review official proceedings of either a legislative, executive, or ministerial

character. (Same case,. pp. 11, 12, 13 ; 43 Barb. 232 ; People v. Supervisors Queens County, 1 Hill, 195 ; People *ex rel.* Church v. Supervisors, 15 Wend. 198.) Mere corporate or ministerial acts can not be reviewed on *certiorari.* The acts must be plainly judicial. (Mount Morris Square v. New York, 2 Hill, 14.)

BLISS, Judge, delivered the opinion of the court.

The County Court of Saline county subscribed for $400,000 of the stock of the Louisiana and Missouri River Railroad Company, and have issued bonds in payment of said stock. Philip H. Thompson and other tax-payers of said county sued out of this court a writ of *certiorari* directed to the judges of said court, charging a want of authority to make the subscription and issue the bonds.

Before considering any other question, the preliminary one must be decided, whether *certiorari* will lie in a case of this kind. "A *certiorari* is an original writ issued out of chancery or the King's Bench, directed in the King's name, to the judges or officers. of inferior courts, commanding them to return the records of a cause depending before them, to the end that the party may have the more sure and speedy justice." (Bac. Abr., Certiorari, A.) The matter not being regulated by statute in Missouri, either as to the cases in which this writ may issue or the practice under it, we are left entirely to the general law. The writ issues only to inferior courts and to review only judicial action. Was, then, the action of the County Court of Saline county, in subscribing to the stock of. this railroad company and issuing bonds, a judicial action? Judicial action is an adjudication upon the rights of parties who in general appear or are brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered. It implies impartiality, disinterestedness, a weighing of adverse claims, and is inconsistent with discretion on the one hand — for the tribunal must decide according to law and the rights of the parties — or with dictation on the other, for in the first instance it must exercise its own judgment under the law, and not act under a mandate

from another power. The tribunal is not always surrounded with the machinery of a court, nor will such machinery necessarily make its action judicial. A County Court is certainly a judicial body for some purposes, but no more so for the name, nor for the fact that it has a seal and a clerk and keeps a record. The character of its action in a given case must decide whether that action is judicial, ministerial, or legislative, or whether it be simply that of a public agent of the county or State, as in its varied jurisdiction it may by turns be each.

The authorities all agree that the action to be reviewed by the writ must be judicial, but they are not wholly consistent as to what action is judicial. I find, however, a great preponderance, both in the reasoning of the judges, and, as I think, in the weight of the authority, against the proposition that proceedings like those of the County Court under consideration can be treated as judicial. There are but two cases in our reports where the writ of *certiorari* as an original writ was issued from this court. The first is Rector v. Price, 1 Mo. 198, where the principal question was the right to issue it under our then constitution; and the other is The Hannibal and St. Joseph Railroad Company v. Morton, 27 Mo. 317, to review the action of reviewers appointed by the Circuit Court in assessing damages to the owners of land over which this railroad passed. The question that arises in the present case was not raised in either of those, as there was no doubt in regard to the judicial character of the action under review; but our decisions upon the various subjects of County Court jurisdiction, in relation to their character as judicial or otherwise, have been generally consistent.

The proceedings in general of County Courts in probate matters have been treated as judicial, especially when they are adverse, and parties are brought in, or are supposed to be in court; and while some things in the laying out and opening of public roads may be considered as legislative or administrative, still all action affecting the property-rights of private persons is clearly judicial and subject to review in the appellate courts. (Overbeck v. Galloway, 10 Mo. 364; Cooper County v. Geyer, 19 Mo. 247; Bernard v. Callaway County Court, 28 Mo. 37; County of St.

Louis v. Lind, 42 Mo. 348; Foster v. Dunklin, 44 Mo. 216.) This court, in The County of St. Louis v. Sparks, 11 Mo 201, seems to treat the action of the County Court against a defaulting collector as judicial, it having been based upon the provisions of article II of the act concerning county treasurers in the revision of 1835 (p. 151)—a very different statute from the one now in force on the subject, and one that made it the duty of the County Court to render judgment against the defaulter.

In approving the bond of a sheriff, County Courts act in a ministerial, and not in a judicial, capacity. (State *ex rel.* Adamson v. Lafayette County Court, 41 Mo. 221; State *ex rel.* Jackson v. Howard County Court, *id.* 247.)

County Courts have exclusive jurisdiction in the repairing of public buildings. "These matters belong to the administrative and ministerial functions of the County Court, and not to the judicial branch of their jurisdiction." (Vitt v. Owens, 42 Mo. 512.)

The action of the County Court in making a subscription to the stock of a railroad company is administrative and discretionary. There is no imperative obligation to make it. (St. Joe and Denver City R.R. Co. v. Buchanan County, 39 Mo. 485.)

We have held, at this term, in Marion County v. Phillips, that a settlement with the county collector was not a judicial act, but that of the public agents of the county with one of its officers; and the general question is also considered. The case of St. Joe and Denver City Railroad Company v. Buchanan County expressly decides the case at bar; and all the cases are inconsistent with the idea that the exercise of a discretionary power, given by law to the County Court of Saline county, if it be given to make a subscription to the stock of a railroad, can be in any sense a judicial proceeding. A court has no discretion, but must render judgment according to the facts and the law, while this subscription might have been made or refused. The judges were bound, it is true, to act with good judgment, judiciously; but exercising a sound judgment is by no means synonymous with rendering judgment, and acting judiciously is not always acting judicially.

Counsel press upon our consideration the authority of Robinson v. Board of Supervisors of Sacramento, 16 Cal. 208, where the action of the board, in raising the salaries of certain clerks, was held by a majority of the court to be judicial, and subject to be reviewed on *certiorari*—Justices Baldwin and Cope constituting the majority, and Chief Justice Field dissenting. Justice Baldwin gives a long opinion, while C. J. Field simply says that he regards the ordinance as a mere legislative act involving in its passage no judicial functions. I have examined the authorities cited in support of the opinion of the majority, and upon which it was expressly based, contrary, as they said, to the original opinion of the judges, and am more than ever impressed with the jumble and uncertainty in which this subject has been involved in our most respectable courts. Among the authorities relied on was Supervisors of Onondaga v. Briggs, 2 Denio, 26, in which the plaintiff had prosecuted the defendant to recover back fees illegally charged and paid him as county attorney. His bills had been annually taxed by a Supreme Court commissioner, upon notice to the chairman of the board of supervisors, and regularly audited and paid by the board. The Supreme Court held that no part of the sums so paid him could be recovered back, and gave the following conclusions of law as applicable to the case: "1. That the taxation was a judicial determination of the matter by officers duly authorized to adjudicate upon it, and, consequently, that the taxation can not be set aside or disregarded in this collateral action. 2. But if the taxation is not conclusive, then the matter has been adjudicated by the board of supervisors, who had ample authority to decide it; and their determination is conclusive upon both parties, and especially upon themselves; and, 3. The plaintiffs have voluntarily paid the money with a full knowledge of all the facts, and can not, therefore, recover it back."

The Supreme Court of California must have relied upon the second proposition and construed it as holding that the board of supervisors, in auditing claims against the county, acts judicially, and that their action has the force of a judgment. If that was intended, it certainly is not the law of Missouri. Our County

Courts are the auditing boards of the several counties, and the statute goes so far as to provide for an appeal to the Circuit Court if the account is rejected. (Gen. Stat. 1865, ch. 38, § 36.) Yet our courts do not hesitate to entertain suits against counties upon rejected claims, which would be absurd if their action had the force of a judgment. So, also, this court issues a *mandamus* against county courts in a proper case, commanding them to pay rejected accounts, which is utterly inconsistent with their judicial character. (State v. Buchanan County Court, 41 Mo. 254.)

The following extract from an opinion of Judge Cowen in one of the cases cited in support of Robinson v. Board, etc., is very pertinent to the general question: "The power to interfere by *certiorari* is laid down very broadly by some *dicta* importing that all infringement of rights by persons legally clothed with authority to act, but who exercise that authority illegally, may be corrected by *certiorari*. * * * * None of these cases, however, in which this language is used, and none which were referred to by the learned judges using it, have gone beyond a review of judicial decisions. Taking these *dicta* in the abstract, we might remove every by-law or other corporate act of every corporation in the State. Parks v. Mayor, etc., of Boston, held that when the mayor and alderman had a right to take property for laying out or widening a street, whenever in their opinion it was necessary, the taking was an exercise of judicial power. (8 Pick. 225.) But no other case, I think, has gone so far; and a liberal application of that decision would seem to take in every act which a corporation can do under any statute power whatever. It was said the corporation was required to adjudicate on the necessity of taking property; but the same thing may be said of every act which a corporation may do under the most common power, even affixing their corporate seal." And this most learned of judges goes on to account for their erroneous opinion, from the fact that our courts have been misled by English decisions in regard to commissioners of sewers, who constitute a court of record, and whose acts are judicial. (In the matter of Mt. Morris Square, 2 Hill, 22.) Since the hearing,

in Robinson v. Board, etc., of Sacramento, the Supreme Court of New York, in The People v. Supervisors of Livingston County (43 Barb. 232), follows up the matter of Mt. Morris Square, in restricting the operation of the writ, and condemning the looseness of the earlier decisions. (See also The People v. Board of Health, etc., 33 Barb. 346.)

If we were to entertain jurisdiction to review by *certiorari* the action of the County Court of Saline upon a discretionary matter, and one involving no judicial functions, I know not what proceeding of county and city authorities might not be brought before us. Counsel are aware of the labor involved to keep down our growing docket, and can readily imagine its condition if we were to assume the power of revising the ministerial and legislative acts of all public agents in the State. Still, had we the jurisdiction, the matter of convenience to the people and bond-holders of Saline, suggested by counsel, would be a proper matter of consideration, as this is a discretionary writ, and not a writ of right; but as it is, ultimate confusion, rather than convenience, would follow such a breaking down of the landmarks of the law.

The motion for the writ was granted without hearing, but the proceedings sought to be reviewed not being judicial, the writ is quashed. The other judges concur.