# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF NEVADA.

## JULY TERM, 1896.

STATE OF NEVADA, EX REL. WILLIAM THOMPSON AND H. H. BECK, PETITIONERS, *v.* THE BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY, RESPONDENT.

CERTIORARI—WHEN LIES TO BOARD OF COUNTY COMMISSIONERS.—The writ of *certiorari* will only run to a board of county commissioners as to matters in which they exercise judicial functions.

IDEM—EMPLOYMENT OF ATTORNEYS BY COUNTY COMMISSIONERS NOT EXERCISE OF JUDICIAL FUNCTION.—The making of an order by such board, whereby it was ordered that a firm of attorneys be employed in a certain litigation in which the county was interested, is not the exercise of judicial functions, and such order will not be reviewed on a writ of *certiorari.*

IDEM—DEFECT OF PARTIES—EFFECT ON JUDGMENT.—Where, owing to a defect of parties before the court upon such a writ, any judgment that might be entered would not be binding upon the real parties in interest, the writ will be dismissed. (Syllabus by BIGELOW, C. J., BONNIFIELD, J., dissenting.)

ORIGINAL PROCEEDING. Application by the State, on the relation of William Thompson and H. H. Beck, against the Board of County Commissioners of Washoe county, for a writ of *certiorari.* Writ dismissed.

*R. M. Clarke* and *T. V. Julien,* for Petitioners.

*F. H. Norcross,* District Attorney, for Respondent:

I.   The respondent, board of county commissioners, in employing attorneys to assist the district attorney, did not exercise judicial functions.   Its action therein was purely executive, and is not subject to review upon *certiorari.*   The writ of *certiorari* is only granted when an inferior tribunal, board or officer exercising judicial functions has exceeded the jurisdiction of such tribunal, board or officer.   (Gen. Stats. 3458; *State ex rel. Mason* v. *Commrs.,* 7 Nev. 392; *In re Rourke,* 13 Nev. 253; *Townsend* v. *Copeland,* 56 Cal. 612; *People* v. *Park Commrs.,* 97 N. Y. 37; 4 Ency. Pleading and Practice, 80; *McCabe* v. *Commissioners,* 46 Ind. 382.)

II.   Boards of county commissioners have authority to employ attorneys to protect the interests of their counties in any litigation affecting them and to bind their counties by contracts for the payment of such attorneys' fees.   (*Clarke* v. *Washoe County,* 7 Nev. 75; *Ellis* v. *Washoe County,* 7 Nev. 291; *Clarke* v. *Lyon County,* 8 Nev. 181; *Smith* v. *Mayer,* 13 Cal. 531; *Hornblower* v. *Duden,* 35 Cal. 664.)

By the Court, BIGELOW, C. J.:

January 7, 1896, the defendant, by an order duly entered on its minutes, employed Torreyson & Summerfield, attorneys, to assist the district attorney in certain tax litigation in which the county was interested, and agreed to pay them therefor the sum of $1,000.   The relators, as taxpayers of said county, have applied to this court for a writ of *certiorari* to annul and set aside that order and agreement, on the ground that the board had no authority to make it.

The first question that arises is upon the respondent's objection that in making the order the board did not exercise judicial functions.   That it is only for the exercise of such functions that a writ of *certiorari* will lie is the plain reading of the statute (Gen. Stats. 3458), and has been so often decided both by this and nearly all other courts that there is now no question concerning it.   (*Esmeralda County* v. *Third District Court,* 18 Nev. 438; *In re Rourke,* 13 Nev. 253; *People* v. *Board of Education,* 54 Cal. 377; *People* v. *Bush,* 40 Cal. 345; *Spring Valley Co.* v. *Bryant,* 52 Cal. 138; *People* v. *Park Commissioners,* 97 N. Y. 37; *People* v. *Walter,* 68 N. Y. 403;

*People* v. *Supervisors*, 43 Barb. 234; *People* v. *Carr*, 23 N. Y. Supp. 112, and the numerous authorities cited in 4 Ency. Plead. & Prac. 74, *et seq.*)

The only question there ever can be is as to whether the board or other tribunal was, in the given instance, exercising judicial functions, or those that are ministerial, executive or legislative.

In an early day in California, under a constitution and statutes from which ours were, upon this matter, substantially copied, it was held that as the supervisors of a county were not " judicial officers or charged with the exercise of judicial duties, it results that a writ of *certiorari* cannot properly be directed to them." (*People* v. *Hester*, 6 Cal. 649.) Subsequently, however, this ruling was modified, it being recognized that the board did sometimes act in a judicial capacity, and it followed that as to such actions the writ was proper. (*People* v. *El Dorado County*, 8 Cal. 61.) Which of these capacities they are acting in, depends upon the subject matter of their action.

Theoretically, the distinction between these powers is clearly defined. The legislative branches of the government make laws and ordinances, and establish rules for the future conduct of men; the executive and ministerial, which includes most of the state and county officers, execute the laws; and the judiciary determines rights and controversies arising under them; but in the practical application of these principles, difficulties arise.

The exercise of a judicial function is the doing of something in the nature of the action of a court. *In re Saline County Subscription*, 45 Mo. 52, in considering this point the court said: " Judicial action is an ajudication upon the rights of the parties who in general appear or are brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered."

Courts do not make contracts, and the making of a contract has none of the elements of judicial action. It follows that the making of this contract for the employment of attorneys in a lawsuit, was not an exercise of the judicial functions that are vested in the board, and consequently the writ of *certiorari* cannot be sustained. It must be remem-

bered in this connection that whether the board had power and authority to make that contract cuts no figure in the present consideration. If .it did not, then the contract is invalid and cannot, be enforced, but, as already stated, whether its making was the exercise of a judicial function depends upon the nature of the act, and not upon the authority of the board. A board would not have power to enact a law for the punishment of felonies in the county, but if it should do so, while its action would be a nullity, it would not constitute a judicial action, and it could not be set aside by writ of *certiorari.*

Nor does the fact that the board was called upon to exercise judgment and discretion in the execution of the contract make it a judicial action in the meaning of the statute, for judgment and discretion must be exercised in almost every action in life, by boards as well as others, and the application of this principle would make their action subject to review by this writ, while it is clear that such was not intended to be the case.

In *People* v. *Board of Education,* 54 Cal. 377, the board had made a change in the text-books to be used in the schools of Oakland. Upon *certiorari* to review their action upon the ground that they had no authority to make the change, it was objected that the action was not judicial, and therefore that the writ would not lie. In sustaining this point the court said: "It is conceded that the board exercised its judgment in the action which it took, but this it was called to do in the exercise of its legislative functions. It. is apparent that the exercise of judgment is not the criterion by which this proceeding must be viewed to determine its character. To render it the exercise of a judicial function, its judgment must act in a matter which is judicial in the sense above indicated."

In *People* v. *Carr,* 23 N. Y. Supp. 112, the court held: "The duties discharged were purely ministerial, although requiring the exercise of judgment and discretion. In such cases *certiorari* will not lie."

And again in *People* v. *Supervisors,* 43 Barb. 237: "To sustain the writ there has been quite a tendency to enlarge the sphere of judicial acts, and to regard almost every kind of

official act requiring or involving the exercise of judgment or discretion as a judicial act. But this, I think, is a mistake. There is scarcely an act of any public officer or body, or of persons clothed with special powers by or under the authority of law, which does not require and involve more or less discretion. It is simply absurd to call all such acts judicial, and apply to them the principles which govern the review of the proceedings of courts and of judicial officers."

So, in the matter of *Saline County Subscription*, 45 Mo. 55, where the point under consideration was whether a subscription to the stock of a railroad made by the county court was a judicial action which could be reviewed by the court; it was said: "And all the cases are inconsistent with the idea that the exercise of a discretionary power, given by law to the county court of Saline county, if it be given to make a subscription to the stock of a railroad, can be in any sense a judicial proceeding. A court has no discretion, but must render judgment according to the facts and the law, while this subscription might have been made or refused. The judges were bound, it is true, to act with good judgment, judiciously; but exercising a sound judgment is by no means synonymous with rendering judgment, and acting judiciously is not always acting judicially."

That the making of a contract by a board of commissioners is not a judicial act is supported by the reasoning or the direct decision of every well-considered case we have been able to find. In *People* v. *Carr*, *supra*, already quoted from, a writ had been sued out for the purpose of reviewing the action of the secretary of state, the comptroller, and the state reporter, as a contracting board, in making a contract for the publication of the reports of the court of appeals. In deciding the case the court used this language: "The remarks already made indicate quite clearly that the action of the defendants was in no sense judicial, and hence not reviewable by *certiorari*. The defendants were the agents of the state to make a contract. If they have kept within the power and authority granted them by statute, the contract is valid; otherwise it is not binding."

In *People* v. *Walter*, 68 N. Y. 410, the court of appeals of that state said: " It is well settled that a *certiorari* does not

lie to a ministerial officer, and the fact that a public agent exercises judgment and discretion in the performance of his duties does not make his action or powers judicial in their character. The superintendent of the new capitol exercises judgment in the making of contracts, and in performing his many duties, but he does not exercise judicial powers." *People* v. *Supervisors*, 25 Hun, 131, is to the same effect.

We have found no cases where the contrary has been decided, although there are cases, both in this court and others, where the point was not made by the attorneys, nor noticed by the court, when, had it been made, it would doubtless have been conclusive. *Sadler* v. *Eureka County*, 15 Nev. 39, comes under this head. Such cases are, of course, not decisions upon the question, it not being jurisdictional, and cut no figure in determining it. But should we overrule the objection now that it has been made, it would be, in effect, to decide that the courts, through the writ of *certiorari*, have a superintending control over the action of every officer in the state to the extent, at least, of determining whether they had authority to act, and of setting aside their action if they did not. It would be a larger task than was intended the courts should undertake.

Upon another ground the court should refuse to entertain the writ in the present case. The necessary parties are not before us, and any decision we might render would really settle nothing. It is a well-known principle that no man's rights can be concluded by a judgment unless he is a party or privy to the action, and has been given his day in court. Neither Torreyson & Summerfield nor Washoe county is a party to this proceeding, and the former certainly would not be, and the latter probably would not be, concluded by the decision rendered here. Should the decision here be against the validity of the order made by the board, they could still sue the county upon its agreement, and litigate the whole question over again, and should it be in their favor, it would not preclude the county from doing the same thing. A writ of *certiorari* is not an absolute right—a debt of justice—belonging to a petitioner. It only issues in the discretion of the court, and where such a state of facts as these exist, it should be refused. (*People* v. *Supervisors*, 34 N. Y. 516;

*People* v: *Board Commissioners* 97 N. Y. 37; *People* v. *Walter,* 68 N. Y. 403, 407; *Black* v. *Brinkley,* 54 Ark. 372; 4 Ency. Plead. & Prac. 183.)

These considerations require the dismissal of the writ and rendered it neither necessary nor proper to pass upon the question of the powers of the board to make the order complained of.

The writ is dismissed.

BELKNAP, J.:   I concur.

BONNIFIELD, J., dissenting:

The record in this case shows the following matters:   The law firm of Torreyson & Summerfield submitted to said board a communication in writing, dated January 7, 1896, which is as follows:   *   *   *

"*Gentlemen:*   We agree and undertake to conduct, in connection with the district attorney of Washoe county, Nevada, all necessary litigation for the collection of the taxes for the year 1895 due or unpaid from the Virginia and Truckee Railroad Company, a corporation, to the treasurer of Washoe county, Nevada, for the compensation of one thousand dollars ($1,000), as full payment for such services in the matter of the said litigation.     TORREYSON & SUMMERFIELD."

On the same date the following proceedings were had by the board and entry thereof made in their minutes:   *   *   * "A communication was received from Torreyson & Summerfield in regard to assisting the district attorney in collecting the taxes due the county for the year 1895, from the Virginia and Truckee R. R. Co., which was read and placed on file. It is hereby ordered that Torreyson & Summerfield be employed to assist the district attorney, in all necessary litigation for the collection of the taxes for the year 1895, due and unpaid from the Virginia and Truckee Railroad Company, a corporation.   The said law firm of Torreyson & Summerfield to be paid the sum of one thousand ($1,000) dollars as fee or compensation for their said litigation.   The said fee to be paid when the said litigation is finally completed."

The question to be determined in this case is:   Did the

said board of commissioners exceed their jurisdiction in the premises?

In 1865 the legislature passed "An act to create a board of county commissioners in the several counties of this state, and to define their duties and powers." (Gen. Stats., p. 529.) By the eighth section of said act (Gen. Stats., sec. 1949) it is provided: "The board of commissioners shall have power and jurisdiction in their respective counties:  *   *   *

"Eleventh—To cause to be erected and finished a court house, jail and such other public buildings as may be necessary, and to keep the same in repair; *provided*, that the contract for building the court house, jail and other buildings be let out after at least thirty days' previous public notice *   *   *   to the lowest responsible bidder, who will give good and sufficient security for the completion of any contract which he may make respecting the same, but no bid shall be accepted which the board may deem too high.

"Twelfth—To control the prosecution or defense of all suits to which the county is a party."

There is no provision in the above-named statute requiring any notice to be given for the letting of any contract, or that any contract shall be let to the lowest bidder, whatever the amount thereof may be, except "contracts for building the court house, jail and other public buildings." But an act supplementary to the above-named act (Gen. Stats., 538) provides: "In letting all contracts, of any and every kind, character and description whatever, where the contract in the aggregate amounts to $500 or more, the county commissioners shall advertise such contract or contracts to be let, stating the nature and character thereof; and when plans and specifications are to constitute part of such contracts, it shall state in the notice where the same may be seen.  *   *   *  All such contracts shall be let to the lowest responsible bidder. Subject to the provisions of section 23 of the act to which this is supplementary."

It will be observed that said supplementary act provides that: "All such contracts shall be let to the lowest responsible bidder, subject to the provisions of the 23d section" of the original act. What contracts are referred to by the words "all such contracts?" Evidently to "all contracts of

any and every kind, character and description whatever, where the contract in the aggregate amounts to $500 or more." What is meant by providing that these contracts shall be let "subject to the provisions of the 23d section" of the original act? Simply that no member of the board shall be eligible to put in a bid for, or receive any such contract, or be interested therein. Said section 23 provides: "No member of the board of county commissioners shall be interested, directly or indirectly, in any property purchased for the use of the county, or in any purchase or sale of property belonging to the county, nor in any contract made by the county for the erection of public buildings, the opening or improvements of roads, or the building of bridges, or for other purposes." And a violation of the above provisions is made a · misdemeanor.

Counsel for respondent contend that it was not the intent of the legislature to include such contracts as the one under consideration by the passage of the supplementary act; that "said 23d section refers to contracts for the purchase and sale of property for the county, for the erection of public buildings, for the opening and improvement of roads, for the building of bridges, and for other purposes," and that, "under the familiar rule of *ejusdem generis,* 'contracts for other purposes' will be limited to contracts of the same general character of the preceding classification." That is, that the phrase "for other purposes" in said 23d section was not intended to embrace contracts for the employment of attorneys. If their construction of said 23d section be correct, it · follows, as will be seen at once, that, by that section, the legislature intended, simply, to prohibit the county commissioners from being interested in the class of contracts specified therein and those of a similar character, and did not intend to make it unlawful for them to be interested in the contracts for the employment of attorneys, or to participate in the fees they may bind the county to pay.

Under such construction of the phrase "for other purposes," a county commissioner, if he should be a licensed attorney, would not be prohibited by that section from entering into a contract with the board to prosecute or defend any and all suits to which the county might be a party. Cer-

tainly such freedom of action on the part of commissioners is not within either the letter or spirit of that section, nor of any act of the legislature. Whether or not county commissioners shall be empowered to employ attorneys to prosecute or defend suits in which the county may have an interest, or to assist the district attorney therein, is a matter wholly in the discretion of the legislature. When such power is conferred it must be exercised like every other power, if at all, in the mode prescribed by the statute. If it be exercised otherwise than, substantially, in the manner required, the commissioners exceed their jurisdiction. Whether the best or the worst method, for the employment of attorneys for counties by the several boards, has been provided or not, is not for the courts or the boards to determine.

It is said by counsel that " the construction sought to be placed upon the statute by petitioners is violative of its spirit and subversive of the general principles controlling the relations of attorney and client." The construction that the petitioners, or relators, place on the said supplementary act is, that it embraces contracts for the employment of attorneys when the contract amounts to $500 or more. Why this construction is violative of the spirit of the act is not made manifest. In *Sadler* v. *Eureka County*, 15 Nev. 39, the object of the legislature in requiring certain contracts to be let out to the lowest responsible bidder, upon due notice given, is declared to be for the protection and benefit of the public, and that these provisions of the law were intended to guard against " favoritism, extravagance or corruption " in letting such contracts. Such, evidently, was the intention of the legislature. It would seem, therefore, that to subserve these purposes, contracts for the employment of attorneys are within the spirit of the statute as well as its letter, the same as any other class of contracts; and that these restrictive provisions were intended to apply to all contracts that amount to the sum named. Why should the public not have the "protection and benefit" of these provisions of the supplementary act, and why should "favoritism, extravagance and corruption" not be guarded against as well in employing attorneys as in the making of any other class of contracts? If there be any good reason therefor it has not

been disclosed. Nor does it appear how or why "such construction contended for by relators is subversive of the general principles controlling the relations of attorney and client." In whatever mode attorneys may be employed, whether under the system of bids and the letting of the contract to the lowest responsible bidder, or otherwise, the county is the client and not the commissioners, and "the general principles controlling the relations of attorney and client" remain precisely the same.

In the case at bar the attorneys employed by the board put in a bid to assist the district attorney in said litigation for a specified fee of $1,000, and on that bid the contract was made. Certainly there was no subversion of "the general principles controlling the relations of attorney and client," by entering into such contract, nor can we see how the matter, in that respect, would have been different, if other bids had been made, and the contract awarded to the lowest responsible bidder. Doubtless if some other competent and responsible attorney, or firm of attorneys, had bid for the employment and named a less sum as a fee, the latter bid would have been accepted instead of the former. At least no valid reason can be assigned why the commissioners should not have done so. But the question in this case is not whether the one or the other mode of employing attorneys for the county is the better policy, but what is the mode intended to be adopted by the legislature.

The language of the supplementary act, " all contracts of any and every kind, character and description whatever, where the contract in the aggregate amounts to $500 or more," is certainly broad and comprehensive enough to include contracts for the employment of attorneys to prosecute or defend suits in which the county is a party, as well as every other contract into which the board is authorized to enter when the same amounts to $500 or more. The language of the statute excludes all exceptions as to contracts of the designated amounts. It seems that the legislature took unusual care in selecting language with which to express its will and intent, so that no one might be misled with reference thereto. It is said that, notwithstanding the language and broad terms used, it was not intended to

include contracts for the employment of attorneys. In answer it may be said that if it was the intention to except these contracts, the exception could and would have been made in terms not to, be misunderstood, or the language quoted above would have been restricted so as to include only certain classes of contracts, by which contracts for the employment of attorneys would have been excluded. No one will deny that the language used is comprehensive enough to embrace the class of contracts such as the one under consideration, and that it is plain and free from ambiguity. Then if the rule of construction, laid down by this court and numerous other authorities, be adhered to, the conclusion must be reached that contracts for employment of attorneys are not excepted from the provisions of said supplementary act, but were intended to be included therein.

"Where the language of a statute is plain, its intention must be deduced from such language, and courts have no right to go beyond it." (*State ex rel. Lewis Hess, et al.* v. *The County Commissioners of Washoe County,* 6 Nev. 104.)

"The duty of every court in construing a statute is to seek the legislative intent to reach the object sought to be expressed and accomplished; but in so doing a court is bound by rules; it cannot go fishing in the minds of its members, or the legislative mind, to reach the desired end; and the first step is, if possible, to ascertain the intent from the language of a statute, and when that is clear and unambiguous, then inquiry stops, because the law says it shall stop." (*Virginia & Truckee Railroad Co.* v. *The Commissioners of Lyon County,* 6 Nev. 69.)

"A fundamental principle in all construction is that where the language used is plain and free from ambiguity that must be the guide. We are not permitted to construe that which requires no construction." (*State* v. *Clarke,* 21 Nev. 337.)

Under the provisions of that act every contractor is required to give security for the proper performance of his contract. Attorneys may, from neglect or want of legal skill, fail to properly prosecute or defend the suits for which they are employed, and the county suffer loss thereby. Why the county should not be protected by proper security in such

cases, as in all other classes of contracts provided for by said act, and why it should not receive all the benefits to be derived from the provisions of that act, and .be protected from all the evils that act attempts to guard against in the one class of contracts, as well as in all others, we think cannot be shown with any degree of reason. If not, it would seem to follow that the legislature did not intend to make any distinction, in these respects, between the classes of contracts the board might enter into for the county.

If we are in error in our conclusions it can be corrected by the legislature amending said supplementary act or passing some other act. To do so it will not be necessary to use . plainer, broader and more comprehensive language than is used in the said act to express its intent, for this perhaps could not be done, but in language in some degree ambiguous and uncertain, when the real intent may be attempted to be arrived at by statutory construction. But, while the language of the statute remains as it is, we see but one proper course to pursue, and that is to adhere to rules set forth in the cases above cited, the language of which is as plain and unambiguous as the language of the supplementary act itself.

The objection that the writ of *certiorari* will not lie in this case because the commissioners in doing the act complained of were not exercising judicial functions, or that said act was not of a judicial character, I think is not well taken. It is argued that entering into contracts by the commissioners is not the exercise of judicial functions. But this court has heretofore decided otherwise, and I see no valid reason why the rule should not be adhered to in this case.

In *Sadler* v. *Eureka County,* 15 Nev. 37, the district court on *certiorari* set aside an order of the board by which it contracted with A. Boungard for widening and deepening the foundation to the court house, then about to be built, at a cost "not to exceed $500." On appeal the judgment of the district court was affirmed. Under the supplementary act above named it will be observed that when any contract amounts to $500 or more, it must be let to the lowest responsible bidder. In the above-named case the contract was let

to Boungard, and not offered to be let under the provisions of said act of the legislature.

Hawley, J., in delivering the opinion of the court, said: "It is apparent upon the face of said order that the commissioners exceeded their jurisdiction in declaring that the cost of said work should not exceed $500, instead of should not amount to $500. The judgment of the district court could be sustained on this technical ground." Why? Because the commissioners in entering into such contract were exercising judicial functions and exceeded their jurisdiction in letting the contract otherwise than to the lowest responsible bidder. It is argued that the letting of a contract by the board is an executive act and not the exercise of judicial functions, or that such an act is not of a judicial character. But in the Sadler case, *supra*, the court held to the contrary. It cannot be said with any degree of reason, that the question as to the character of the board's act in that case was not considered or decided, and that, therefore, the decision in that case is not in point. For this court has repeatedly held that *certiorari* will not lie to review and set aside an act or proceeding of an inferior tribunal, board or officer, unless the act complained of is of a judicial character, or the doing of the act was in the exercise of judicial functions. This rule is so well settled by a concurrence of the authorities that, in proceedings on *certiorari*, the first question that presents itself to the mind of the reviewing court is: Is the act complained of an act done in the exercise of judicial functions, or, in other words, is it of a judicial character? If it be considered that it is not, the court issuing the writ or reviewing the matter complained of has no legal power to annul it. To hold that this court did not pass upon the legal character of the act of the commissioners in the Sadler case, *supra*, and did not determine that the commissioners in entering into the contract were exercising judicial functions, it seems to me is imputing to the court gross dereliction of duty in not passing upon that vital question in the case, and imputing to it a usurpation of power, in setting aside the contract, more inexcusable than the power assumed by the Eureka board in entering into the contract.

In *Andrews* v. *Pratt*, 44 Cal. 309, 318, the court holds that

an order by the board of supervisors of an allowance of a claim against the county stands as a judgment of a court of competent jurisdiction. Then, certainly, allowing a claim against the county is an act of a judicial character. I cannot see why entering into a contract to bind the county to the payment of a certain claim is not of the same character. It is in effect and practically the same thing.

Upon other and further grounds I am of opinion the proceedings of the board in question should be set aside.

It seems to me that the county commissioners have no power to employ attorneys to prosecute or defend any case at their mere discretion, but only when their judgment pronounces, after an examination of the facts of the case, that there is a necessity for such employment to protect the interests of the county; and that, in determining upon the necessity of such employment, from the consideration of all the pertinent facts tending to enable them to arrive at a conclusion, such as the nature and importance of the litigation, the amount involved or the principles at stake, and the ability or lack of ability of the district attorney to properly manage the litigation, etc., the commissioners exercise judicial functions; and that the order entered employing attorneys is fatally defective in not stating the ground upon which it is made. These legal propositions are fully sustained by the case of *People* v. *The Supervisors of Marin County,* 10 Cal. 344, in the opinion of the supreme court delivered by Field, J. In that case the board of supervisors passed an order requiring a constable to file another bond, with two or more sureties, within fifteen days. This was done on the assumption that the board had the power to do so as a mere matter of discretion, under the provisions of a statute which empowered them " to require new bonds of any county or township officer with additional securities whenever they deemed the same necessary." The court held that the exercise of the power to require new bonds was not left to the arbitrary discretion of the supervisors, but that their action was to be governed by a consideration of the form of the original bond and the responsibility of the obligors, and that in determining upon the sufficiency of the bond they were exercising powers of a judicial character, and that the

order made was fatally defective in not stating the ground upon which it was based.

. Upon the grounds and authorities above cited, and the foregoing reasons, I cannot concur in the decision in the case at bar, and therefore respectfully dissent.