THE PEOPLE, &c., ex rel. ISAAC BUTTS and ors., *v.* THE COMMON COUNCIL OF THE CITY OF ROCHESTER.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1871.)

The decision, in due form, of the common council of Rochester, in apportioning the expense of erecting bridges in that city, by assessment upon the tax-payers benefited (Laws 1861, chap. 143, § 191, &c.), is not questionable by the courts, unless persons who could not be benefited are assessed.

The assessment may be made before title is acquired to the land necessary for the bridge, and notwithstanding section 189 of the charter (Id.) prohibits the common council from taking, &c., any lands, &c., until damages for the taking are paid.

An assessment founded on proceedings continued at an adjourned meeting of the common council, the adjournment having been made by a minority of the board beyond a single day, but to a day appointed for a regular meeting, is not, for that reason, void.

The People ex rel. Butts *v.* The Common Council of the City of Rochester.

Where notice directed attendance at a day and place from seven to nine o'clock P. M., for the hearing of appeals, and all who appeared were heard, and it did not appear that any one who desired a hearing was prevented by reason of the short time allowed, the proceedings are not void.

Upon *certiorari* against the city to review the proceedings taken in assessing for expense of a bridge, the court will not, as a ground for annulling the assessment, consider the validity of a contract made for building the bridge.

Where the proper assessment has been directed, a clerical error, by which the amount is increased beyond the estimated expense, does not vitiate the assessment.

Section 608 of the charter, which provides that all assessments theretofore or thereafter made for improvements in that city shall be valid and effectual, notwithstanding irregularity, omission or error in the proceedings, is a complete answer to objections such as are above specified.

THIS was a *certiorari* to the common council of the city of Rochester, brought to review proceedings taken by it with reference to the erection of a bridge over the Genesee river in that city, and payment of the expense thereof.

The petitioners were owners of property assessed for the expenses of the bridge, and tax-payers in the city, and they petitioned for the writ on their own behalf, and that of all other similarly assessed tax-payers of the city.

The return to the writ showed that the common council, without any formal petition therefor, had determined upon the erection of the bridge, and had taken the proceedings complained of for the erection thereof, and for the assessment of the expense upon owners and occupants of houses and lands to be benefited, which expense was fixed, according to estimates of the city surveyor, at the sum of $150,000.

A notice in the following terms was published in two daily papers of Rochester, viz.:

NOTICE.

CITY ASSESSOR'S OFFICE,
ROCHESTER, N. Y., *March* 15, 1871.

Notice is hereby given, that the assessment rolls for the following named improvements have been completed, and

appeals therefrom will be heard by the assessment committee, at the assessor's office, city hall, on Monday, March 27, 1871, from seven till nine o'clock P. M. of that day:

Improvement of Atwater street.

Bridge across the Genesee river at Vincent place.

H. H. CRAIG,
C. W. BRIGGS,
WM. CARING.
*Assessment Committee.*

The objections made to the proceedings appear from the opinion of the court.

*E. A. Raymond,* for the relators.

*Geo. F. Danforth,* for the defendants.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. We have been called upon on repeated occasions to take from the common council of Rochester the powers and duties imposed upon them by the city charter and assume them ourselves, but we have thus far declined to do either, believing that the legislature has wisely withheld from us the power to govern cities or to exercise any power conferred on the municipal authorities of cities or towns. The people residing within the limits of a municipal corporation are presumed to be capable of electing competent agents to carry on the government, and it is also presumed that there are to be found in each a sufficient number of men of intelligence and integrity to discharge the duties devolving on the officers of such municipality.

It is the fault of the people, therefore, if incompetent or unworthy men are elected to municipal offices.

The neglect to select competent men furnishes no reason why the courts should assume to themselves the duty of governing these corporations upon the supposition that they are better able to discharge the duties devolving upon the officers

of such government than are the persons elected for that purpose. We disclaim any such power and we refuse to assume any such authority.

If the corporate authorities assume to take the property of the citizen, or to impose upon him burdens, or to deprive him of his property without authority of law, or if, having acquired jurisdiction to inaugurate proceedings for any such purpose, they shall omit to comply with the requirements of the statute authorizing them to act in essential particulars, the court will interfere and set aside their proceedings and compel them to proceed in conformity with the law.

With matters entrusted to their discretion, or as to which they are not clothed with judicial power, the courts have nothing whatever to do. (*The People* v. *Van Alstyne,* 32 Barb., 131; *Same* v. *Supervisors of Livingston,* 43 Barb., 232; *Same* v. *Commissioners of East Hampton,* 30 N. Y., 72; *Birdsall* v. *Phillips,* 17 W., 464; *Prindle* v. *Anderson,* 19 W., 391; *People* v. *Brooklyn,* 23 B., 166; *The People ex rel. Citizens' Gas-light Co.* v. *Board of Assessors,* 39 N. Y., 81; *People* v. *Fredricks,* 48 Barb., 173; *People ex rel. Cook* v. *Board of Police,* 39 N. Y., 506; *People* v. *Board of Health,* 33 Barb., 344.)

In examining the questions presented by the return to the *certiorari* in this case, it will lessen the labor to consider the objections made to the proceedings to assess the citizens of Rochester, or such of them as the common council has determined are benefited by the bridge, in the order in which they are presented by the relator's counsel.

The first objection to the proceedings of the common council is, that it has not made the assessment of the expense of building the bridge upon the whole city, thereby treating it as a general public improvement, and not as a local public improvement for which the assessment must be in whole or in part local.

The charter makes no difference in the mode of proceeding to make an assessment, whether the expense is to be borne

by all the tax-payers of the city, or the whole or a part of the expense is to be charged on a part only of the tax-payers.

The legislature has entrusted it to the common council to determine what part of the tax-payers are benefited by the proposed improvement, and who should, for that reason, contribute to the expense. The charter declares the decision of the council to be final on that question, and the law would have so held it to be had the charter been silent on the subject. (*People* v. *City of Brooklyn*, 23 Barb., 166.)

If it was shown, in any competent manner, that persons were assessed who could not be benefited by the erection of the bridge, it would be our duty to annul the assessment as to them. (*People* v. *Brooklyn, supra.*)

But there is nothing to show but that all are benefited who live within the limits established by the common council.

We cannot, in the absence of evidence, say that persons living half a mile or a mile from the proposed bridge will not be benefited by it.

2d. The next objection is, that the common council had not, when the assessment was ordered, nor since, acquired title to the land at either end of the bridge, on which to erect piers or to be used as a highway to get on and off the bridge.

It is true that title to the land has not been obtained, and the council is in the attitude of raising money by tax for the erection of a bridge, without any land on which to place it.

Section 189 of the charter forbids the common council to take or enter on any lands until the damages for taking the same are paid.

They and their agents and officers would, therefore, be trespassers, should they attempt to construct the bridge on the land at either end of the bridge.

But this prohibition does not affect the proceedings in making and perfecting the assessment.

Those proceedings and the proceedings to acquire title to the lands are wholly distinct and independent. They may go on *pari passu* or separately, at the election of the council.

It would be most unjust to allow the authorities to compel

The People ex rel. Butts *v.* The Common Council of the City of Rochester.

the tax-payers to pay into the treasury $150,000 of money, when it cannot legally be used, and, perhaps, never can be.

The proper remedy for the plaintiffs would be an injunction to restrain the collection of such tax until the title to the land has been acquired. After the confirmation of the assessment, the proceedings to enforce payment are to be conducted by officers of the city designated for that purpose.

If we had the power on *certiorari* to affirm the proceedings of the common council in part, and reverse in part, we could not protect the relators in this case, as the officers to be controlled are not before us, nor are they parties to this proceeding.

3d. It is next objected that the proceedings for making and confirming the assessment rolls are irregular and void.

For support of this proposition, the relator's counsel relies on the error committed by the minority of the council in adjourning from the regular day of meeting to the next regular day, instead of the next day. This error he insists vitiates all the proceedings in relation to the assessment. By parliamentary law, the minority can adjourn to the next day on which the body can meet for the transaction of business. If it meet but once a month, the adjournment may rightfully be to the next monthly meeting.

But a more conclusive answer to this, and to most of the alleged subjects in the proceedings, is, that the statute is directory merely, and not mandatory.

The notices seem to have been properly published in the official paper of the city. The charter requires the designation of but one official paper, yet others may be designated in which official notices may be published.

It would have been a great outrage, had the common council limited the time for hearing the objections of tax-payers to the assessment to two hours. But they did not so limit it. Those who appeared were heard, and it does not appear that any desiring to be heard were prevented by reason of the shortness of time allowed for the purpose.

4th. The assessment having been illegally made, the subse quent confirmation does not remedy the defect.

This proposition is correct, if the assessment was illegal. But it is not, and upon its confirmation it became final and conclusive.

5th. The contract entered into with Leighton for building the bridge is void.

We have nothing to do with this contract. We cannot know whether its provisions are wise or unwise. We are to presume that it is a proper and judicious contract, unless it is in violation of the charter.

If it is void, it will be so declared when an action is brought upon it, or when some other proceeding is instituted to annul it to which Leighton is a party. He is not a party to this proceeding, and his contract cannot be annulled until he has had an opportunity to be heard.

6th. The amount actually assessed is $542.49 more than the estimated expense of the work, and the whole assessment therefore is illegal and void.

If the common council had directed the assessment and col lection of $542.49 more than the estimated expense, the assessment would, I have no doubt, have been void. But, in all the resolutions of the council, the amount to be raised is limited to $150,000, the estimated expense. It is obvious, therefore, that no more than the true amount was directed to be raised. The excess is the result of error in carrying out assessments or in footing up the columns. If the error is thus caused, the assessment is not void, but may be corrected by the common council.

It may be that the assessment in question is both oppressive and unjust. If so, it would be gratifying to us could we, consistently with our views of the law, grant the people relief; but we cannot. The construction that operates harshly to-day may operate advantageously to-morrow. If the construction of statutes should vary to meet the varying whims and caprices of the people, neither property nor life would be secure, and corruption and venality would very soon com-

pel all good men to insist upon the adherence by the courts to their decisions.

A further and conclusive answer to all the alleged defects and irregularities in the proceedings of the common council, in relation to the assessment, is that they are cured by section 608 of the charter, which provides that all assessments theretofore or thereafter made for improvements in said city are declared to be valid and effectual, notwithstanding irregularity, omission or error in the proceedings relating to the same.

The *certiorari* must be quashed, with costs to be paid by the relators.