THE ST. JOSEPH AND DENVER CITY RAILROAD COMPANY, Petitioner, *v.* BUCHANAN COUNTY COURT, Respondent.

1. *Municipal Corporations—Counties—Constitution.*—The act of the General Assembly of February 11, 1861, (Sess. Acts 1861–2, p. 388,) authorizing the County Court of Buchanan county to subscribe to the stock of railroads terminating at or near said county, after submitting the matter to a vote of the taxable inhabitants of said county, left to the court the discretion of subscribing or refusing to subscribe to such railroads notwithstanding a vote of the taxable inhabitants authorizing it to make such subscription. The General Assembly had authority to authorize counties and municipal corporations to subscribe to the stock of railroads in other States terminating at or near the boundaries of such counties. The provisions of said act are inconsistent with the provisions of the present Constitution, which provides for submitting the question of such subscriptions to the qualified voters of the counties without any qualification as to taxation.
2. *Constitution — Laws — Legislature.* — The Constitution, except when special provision is made for that purpose, does not enforce itself. It gives certain powers, but to make them operative legislation is necessary. Laws which become inoperative on account of repugnancy to, or inconsistency with, the Constitution, must be legislatively amended before they can be put in execution.

### Petition for Mandamus.

*Woodson & Jones*, for petitioner.

The counsel for petitioner refers to the following authorities: 27 Mo. 225; 28 Mo. 259; 30 Mo. 111; 41 Me. 15; 33 Mo. 440; 18 B. Mon. 848; 22 Barb. 404; 2 Gray, 370; 11 B. Mon. 154; 12 Mo. 166; 2 Kan. 455; 23 Mo. 517; Redf. on Railw. 535.

*Ensworth*, for respondent.

I. The power desired to be forced upon the County Court of Buchanan county, Mo., to exercise by the subscription of capital stock in the St. Joseph and Denver City Railroad Company of the State of Kansas to construct a railroad outside of this State, and compel the citizens of this State to contribute to the fund to enter into said speculation, is unconstitutional—22 Mo. 387.

II. The power granted to the County Court of Buchanan county was a discretionary power.

III. The writ of mandamus will not be granted unless the party asking it has a clear right, and no other specific remedy; and will not be granted to review the proceedings of inferior courts in a case where a writ of error will lie, or where the party can be otherwise redressed—27 Mo. 225, and citations; 23 Mo. 454; 3 Dallas' U. S. R. 42; 2 Barn. & Ad. 124 & 163; 3 id. 270; 14 East. 395; 3 Bin. 372, & 5 Bin. R. (Penn.) 73; 19 Johns. 259; 8 B. Mon. 65; 33 Mo. 303; 14 Gray, 164; 7 Gray, 280.

WAGNER, Judge, delivered the opinion of the court.

This is a petition for a mandamus by the relator, a corporation of the State of Kansas, against the judges of the County Court of Buchanan county to compel them to make a subscription in behalf of the said county to the stock of the said corporation. The petition avers that the relator is a corporation duly incorporated by the State of Kansas for the purpose of building a railroad; that its eastern terminus is at Ellwood, in Kansas, on the Missouri river, opposite the city of St. Joseph, in Buchanan county; that by an act of the General Assembly of the State of Missouri, entitled "An act to authorize the County Court of Buchanan county to subscribe stock for railroads and other purposes," approved February 11, 1861, it was provided that the said County Court of Buchanan county should have power to subscribe for the capital stock of railroads terminating at or near the said county of Buchanan, or for the stock of any other improvements tending to promote the general interest of said county; to issue the bonds of the county for said subscription, and provide by special tax or otherwise for the payment of calls due on said stock and interest due on said bonds, and the payment of said bonds when due—provided the proposition to subscribe for said stock, specifying the nature, amount and terms of said subscription, and the manner in which the same is to be met, and liquidated by special tax or otherwise, should be first submitted to a vote of the taxable inhabitants of said county, and a majority of the votes polled for or

against the said proposition should be valid and binding upon the said county ;—that the County Court, at its March term, 1866, in pursuance of the said act, submitted a proposition to the taxable inhabitants of Buchanan county who were qualified voters, for their ratification or rejection, to subscribe for four thousand shares of the capital stock of the St. Joseph and Denver City Railroad Company, said shares amounting in the aggregate to four hundred thousand dollars; that an election was held in pursuance of said order of said County Court, and that two thousand one hundred and thirty-eight votes were cast in favor of the proposition, and eight hundred and fifty-nine votes were cast against it; that an application was filed in writing with said court praying the court to subscribe for four thousand shares of the capital stock of said company upon the terms prescribed in the order of said court, and ratified by the people of the said county at the said election; that the court rejected the said application and refused to make the said subscription.

The respondents filed a demurrer to the petition, and allege substantially that the act of the Legislature authorizing the County Court of Buchanan county to subscribe for shares in the capital stock of a foreign corporation is in contravention of the Constitution of this State; that the submission to a vote of the people was illegal and not in conformity with law; and that the act of the Legislature vested a discretionary power in the County Court as to making the subscription, and that its action ought not to be controlled in this court by mandamus.

We have not been able to find anything in the Constitution inconsistent with the power delegated to the County Court giving it authority to make subscriptions of stock to railroads terminating at or near Buchanan county. The object was to promote the trade and commerce of the county, and conduce to its general benefit; and in a frontier county these objects are as essentially accomplished by building up lines of transit, although they run through another State, when they terminate at or near its boundary,

as if the lines or corporations were wholly within our own territory. This very question was much discussed and considered in this court in the case of the City of St. Louis v. Alexander, 23 Mo. 483; and the bonds issued by the City of St. Louis to the Ohio and Mississippi Railroad, a foreign corporation, were held valid and binding. This seems to be the current law on the subject, and the power undoubtedly exists when there is no express constitutional prohibition to the contrary—Redf. on Railw. § 230, p. 535, and authorities cited in notes.

A much more difficult question is presented in the manner in which the matter was submitted to a vote of the people for their ratification or rejection. The act provides that before the court shall have power to make the subscriptions the proposition must be submitted to a vote of the taxable inhabitants of the county, and a majority of the votes polled for or against the proposition shall be valid and binding on the county. The order for an election was not made, nor did the vote take place, till after the adoption of the present Constitution. The third section of the eleventh article of the Constitution declares that "all statute laws of this State now in force, not inconsistent with this Constitution, shall continue in force until they shall expire by their own limitation, or be amended or repealed by the General Assembly. The 14th section of the same article is as follows: "The General Assembly shall not authorize any county, city or town to become a stockholder in, or to loan its credit to, any company, association or corporation unless two thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent thereto." Section three of article two defines who shall be a qualified voter. By the very terms of the Constitution, all statutory laws which are inconsistent with its provisions are abrogated. The act of the General Assembly providing for taking the vote of the people of Buchanan county, and confining it to a majority of the taxable inhabitants, is repugnant to and inconsistent with that section of the Constitution which

places an inhibition on counties, cities and towns from sub-
scribing to stock or loaning their credit unless authorized so
to do by a two-thirds vote of the qualified voters. The or-
der was not made providing for a submission of the proposi-
tion to a vote of the people till after the Constitution had
taken effect and was the organic law of the land; and as no
vested rights had accrued previous to its adoption, it must
have complete and absolute control. There is no question
made here but that the voters who voted at the election were
qualified voters according to the Constitution, and that they
all took the oath of loyalty as prescribed in section three of
article two; but there was another qualification superadded
which required that they should be taxable inhabitants. The
Constitution imposes no such restriction, but opens the bal-
lot to all who are qualified voters. A two-thirds vote was
received in favor of the proposition at the election, but how
many were disqualified by reason of the restriction to taxa-
ble inhabitants does not appear. The effort evidently was
to conform to the constitutional requirements as to the qual-
ification of voters, and also to carry out the act of the Legis-
lature by restricting the vote to those who are taxable inhab-
itants; or, in other words, to engraft the constitutional
provision upon the enactment as an amendment. We think
this could not be done. The Constitution, except when spe-
cial provision is made for that purpose, does not enforce it-
self. It defines certain powers, but to make them operative
legislation is necessary. Laws, therefore, which are inoper-
ative on account of repugnancy to or inconsistency with the
Constitution, must be legislatively amended before they are
capable of execution.

One other question remains to be noticed. The act pro-
vides that the County Court "shall have power to subscribe,"
but before the subscription is made the proposition must
"first be submitted to a vote of the taxable inhabitants of said
county, and a majority of the votes polled for or against such
proposition shall be valid and binding upon said county."
When the proposition is carried by an affirmative vote, is the

duty of the court merely ministerial, or is it still vested with a discretion to subscribe or not? The law says the court shall have power, and a majority vote shall be valid and binding upon the county. If the action of the court is rendered imperative, it is by virtue of the words "valid and binding upon the county"; but it does not say it shall be binding on the court, and it shall be its duty to make the subscription. If the Legislature intended such to be the meaning, they have certainly been very unhappy in the use of language. What is meant by the words "valid and binding on the county," is that the minority shall be bound by the vote of the majority, and that if the subscription is then made the contract shall be binding, and the county will not be at liberty to repudiate its obligations. But the vote, with this qualification, is only advisory, and the authority delegated to the court is entirely permissive. It "shall have power" if it seems meet to do so, but no imperative injunction is contained in the law compelling it to act. There is nothing which authorizes us to say, that there was an intendment that the court should be divested of all discretion. It would be entirely competent for the Legislature to enact a law which would be mandatory on the court, but such has not been done in this case.

The demurrer must be sustained.

The other judges concur.