STATE OF MISSOURI *ex rel.* THE MISSOURI AND MISSISSIPPI RAILROAD COMPANY, Relator, *v.* THE MACON COUNTY COURT, Respondent.

*Constitution—Laws—Construction—Railroad Corporations--Court.*—The provision of the Constitution, art. 11., § 14, G. S. 1865, p. 43, is a limitation upon the future power of the General Assembly, and was not intended to retroact so as to have any controlling application to laws in existence when the Constitution was adopted. The law does not favor the repeal of statutes by implication. In the construction of statutes, all acts passed on the same subject *in pari materia* must be taken and construed together, and made to stand if they can be reconciled. The provision of the charter of the Missouri and Mississippi Railroad Company (Sess. Acts 1865, p. 86, § 13) authorizing the county courts of any county to subscribe for the stock of said company and to issue bonds therefor, &c., was not repealed by the Constitution, Art. XI., § 14.

## Petition for Mandamus.

*A. J. Williams, T. A. Jones,* and *A. L. Gilstrap,* for relator.

I. There are three questions before this court for judicial determination, viz.: 1. To what extent is section 13 of the charter of the Missouri & Mississippi Railroad Company (Sess. Acts 1865, p. 86) controlled by section 30 of the general act of 1861 ? 2. What effect has section 14, art. 11, of Constitution upon section 13 of said charter? 3. Is section 13 of said charter repealed by section 17, ch. 63, General Statutes of 1866, p. 338 ?

We think the first question has been conclusively settled by this court in the case of City and County of St. Louis v. Alexander, 23 Mo. 507.

II. The respondent claims that the enabling act was repealed by the Constitution, not by express terms, but by necessary implication. It has been repeatedly decided that the rule of construction concerning statutory repeals by implication is applicable to the inquiry, whether any particular enactment has ceased to be in force on account of repugnancy to a Constitution—Ohio ex rel. Evans v. Dudly, 1 Ohio, 437,

approved in Cass v. Dillon, 2 Ohio, 610 ; see also 8 Ohio, 398 ; 22 How. 364. All of these cases affirm the identity of the rule in the two clauses of repeal. (See also Smith Com. p. 418.)

The rule is, that repeals by implication are not favored. This rule is the result of a long course of decisions. "Although two acts of Parliament are seemingly repugnant, yet if there be no clause of '*non obstante*' in the latter they shall, if possible, have such construction that the latter may not be a repeal of the former by implication"—Bac. Abr. tit. Stat. D. ; 4 Gill. & Johns. 6 ; Sedgw. Const. Law, 123 ; Dwar. on Stat. 532 ; 4 How. (U. S.) 53.

Courts are bound to uphold the prior law if the two may subsist together—2 Barb. 316 ; 5 Hill, 221 ; 10 Barr. (Pa.) 442 ; Smith Com. p. 879, § 757 ; 3 Ohio, 553 ; 10 Ohio, 178.

All laws not repugnant are specially saved by the Constitution—§ 13, art. 11, Const. Mo. In the light of this rule let us see if there is any repugnancy between, the Constitution and the said section of the railroad charter ; see if they are irreconcilably inconsistent with each other—so contrary that they cannot be reconciled ; if there is no fair course of reasoning by which they can be reconciled. The relator contends that section 14 of art. 11 of the Constitution and the law in question are not repugnant to each other. The section refers to future legislation and to that only. It should be so construed as to have a prospective and not a retroactive effect—3 Edw. 464 ;. 9 C. B. 551 ; Broome's L. Max. 37 ; 13 B. Mon. 19. The General Assembly it speaks of is the Assembly created by the Constitution and not any past Assembly. The acts it prohibits are not subscriptions under existing laws but the making any more such laws—2 Ohio, 618 ; 3 Barb. 332. The section acts as an inhibition upon the Legislature and not upon county courts. The section is a limitation upon the future powers of the General Assembly and not an abridgment of the powers of any past Assembly—13 B. Mon. 19 ; 3 Edw. 464 ; 9 C. B. 551 & 557 ; Newell v. The People, 3 Seld. (N. Y.) 97 ; Gibon v. Ogden,

9 Wheat. 188 ; 2 Hill, 31 ; 4 Hill, 384 ; 4 Ohio, 383, 385. It has not been suggested that there is any ambiguity or obscurity in the section under consideration.

One statute is never repealed by the spirit of another— Cass v. Dillon, 2 Ohio, 612 ; 8 B. Mon. 11 ; State et al. v. City of Cincinnati, 19 Ohio, 195.

1. If the Convention intended to give section 14 a retroactive effect to disturb past legislation, to repeal laws already in force, words to that effect would have been used. This view is strongly supported by the fact that the Convention did give at least one section of the Constitution a retroactive effect in distinct terms, viz., sec. 28 of art. 4, concerning lottery tickets. The first clause of this section contains a prohibition on the General Assembly, using the same language as in sec. 14, art. 11 ; but the second clause reaches further and absolutely forbids the sale of lottery tickets, while the third clause forbids the drawing of lotteries and the sale of tickets even under existing laws authorizing the same ; thus first limiting the power of the General Assembly, and then in express terms forbidding an act. Sec. 14, art. 11, contains the same limitation upon the powers of the General Assembly, but nowhere either in this or any other section of the Constitution is a county court forbidden to subscribe to the capital stock of corporations.

2. It is by no means an inconvenient mode of construing statutes to presume that the Legislature was aware of the state of the law at the time they were passed—Jones v. Brown, 2 Exch. 332, per Pollock, J.

The Ohio Constitution of 1851 contains a provision, the prohibitory clause of which is couched in the precise language of the prohibitory clause of our own Constitution now under consideration. This clause received a judicial interpretation by the highest tribunal of Ohio in Cass v. Dillon, in 1853, which has been repeatedly affirmed by the courts of that State in a course of decisions running through a period of twelve years prior to the passage of our own Constitution. We cannot suppose that this identity of language in the con-

stitutional provisions of two great States was the result of chance merely; neither can we suppose that our Convention were ignorant of the interpretation which had been given this clause by the courts of Ohio. On the contrary, the presumption is that our Convention borrowed this clause from the Ohio Constitution, and that they well knew and approved of the interpretation which had been placed upon it by the courts of that State.

But it may be urged that sec. 13 of art. 11 of the Constitution prohibits the State from becoming a stockholder in any corporation, and that a limitation upon the State is *ex necessitate* a limitation upon her subdivisions. This point was much discussed in Cass v. Dillon, and it was therein decided that when the Constitution speaks of the State, the whole State in her political capacity, and not her subdivisions, is intended—3 Barb. 332; 13 B. Mon. 17; 2 Ohio, 616; 2 Ohio, 621–3.

The Constitution of Indiana which took effect November, 1851, contained the following provision: "No county shall subscribe for stock in any corporation unless the same be paid for at the time of subscription, nor shall any county loan its credit to any incorporated company, nor borrow money for the purpose of taking stock in any such company"—§ 6, art. 10, Const. Ind. Here is a prohibition clear and explicit which was held in Aspinwall v. Com. of Davies Co., 22 How. (U. S.) to be a limitation of the power of county commissioners. Why did our Convention incorporate into our fundamental law the Ohio rather than the Indiana provision? unless it was that they intended not to disturb past legislation on the subject under consideration.

*Hall* and *Eskridge*, for respondent.

I. The subscription of stock is in violation of the Constitution of Missouri, secs. 3 & 14 of art. 11—39 Mo. 488; 22 How. 376–7; 2 Ohio, 640 & 643; 13 B. Monroe, dissenting opinion, pp. 41 & 48.

II. The charter was amended—See Acts of 1865, pp. 88–9, § 14 ; R. C. 1865, § 17, ch. 63, p. 338.

III. There was no vested right under the charter at the adoption of the Constitution—13 B. Mon. 148 ; 22 How. 377. The law as it was before the adoption of the new Constitution required a submission to a vote of the people before taking the stock—Laws of Mo. p. 60, §§ 1 & 2 ; 18 Mo. 214–15 ; R. C. 1855, p. 371. § 7.

WAGNER, Judge, delivered the opinion of the court.

The question presented by the record relates to the validity of the subscription of stock made by the County Court of Macon county for the construction of the Missouri and Mississippi railroad. The relator was duly incorporated by an act of the Legislature approved February 20, 1865, and by the 13th section of its charter it is declared "It shall be lawful for the corporate authorities of any city or town, the County Court of any county, desiring so to do, to subscribe to the capital stock of said company and may issue bonds therefor, and levy a tax to pay the same not to exceed one twentieth of one per cent. upon the assessed value of taxable property for each year." The 14th section expressly prohibits the Legislature from repealing or annulling the charter, but no direct provision is made against its being altered or amended. The County Court of Macon county, on the second day of April, 1867, by an order duly entered of record, took and subscribed one hundred and seventy-five thousand dollars in the stock of the said company without first having submitted the matter to vote of the people. The present Constitution of this State, which took effect and went into operation on the 4th day of July, 1865, provides in the third section of the eleventh article that "all statute laws of this State now in force, not inconsistent with this Constitution, shall continue in force until they shall expire by their own limitation, or be amended or repealed by the General Assembly ;" and by the 14th section of the same article it is provided that "The General Assembly shall not authorize any county, city

or town to become a stockholder in, or to loan its credit to, any company, association or corporation, unless two thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent thereto." The Legislature at its session of 1865–6, in the revision of the general railroad law, declared that "it shall be lawful for the County Court of any county, the city council of any city, or the trustees of any incorporated town, to take stock for such county, city or town, in, or loan the credit thereof to, any railroad company duly organized under this or any other law of the State; *provided* that two thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent to such subscription—G. S. ch. 63, § 7, p. 338. The County Court, after making the subscription, having refused to issue the bonds, a mandamus is prayed for, and it is resisted on the grounds mainly that the action of the court was illegal and void, because the authority under which they assumed to act was inconsistent with the Constitution and the statute law of the State passed subsequent to the granting of the charter. The original charter to the company contains no provision requiring a vote to be taken as to whether stock shall be subscribed, but leaves the matter wholly discretionary with the corporate authorities of any city or town, or the County Court of any county. Prior to the adoption of the new Constitution there was no limitation on the power of the Legislature to authorize subscriptions to be made by corporate bodies, and the act must be held valid and binding unless it is repealed by virtue of the constitutional provisions before quoted, or by some statutory enactment. That there is no direct repeal is palpably evident, and it can only be impliedly repealed on account of inconsistency or repugnancy. In the rules relating to repeals, the same canons of construction apply equally to constitutions and statutes. It may be conceded as the settled doctrine, that a subsequent statute which is clearly repugnant to a prior one, and which is so clearly inconsistent that the two cannot stand together, necessarily

repeals the former one although no express words of repeal are used. But it is equally well settled that the law does not favor the repeal of a statute by implication. A later statute which is general and affirmative does not abrogate a former which is particular unless negative words are used, or unless the two acts are irreconcilably inconsistent— Deters v. Renick, 37 Mo. 597 ; Dwar. on Stat. 532–3 ; 11 Coke, 63; Dyer, 347 ; Brown v. Co. Ct., 21 Penn. 37 ; O'Niel v. Commonwealth, id. 427 ; Sedgw. Stat. & Const. Law, 123. It is a fair presumption that if the Legislature intend to repeal a statute they will do so in express terms, or by the use of words which are equivalent to an express repeal ; and a court will not, if it can consistently be avoided, adjudge that a statute is repealed by implication—Ludlow v. Johnston, 3 Ohio, 553 ; Dodge v. Gridley, 10 Ohio, 178.

A case raising a question very similar to the one now under consideration was presented to this court several years ago, and was thoroughly considered and examined—City & Co. of St. Louis v. Alexander, 23 Mo. 483. In that case an act of the General Assembly entitled "An act to reduce the law incorporating the City of St. Louis, and the several acts amendatory thereof, into one act and to amend the same," approved February 8, 1843, contained the following provisions : " The city shall not at any time become a subscriber for any stock in any corporation." By a special act approved March 1, 1851, enacted while the above general prohibition was in force, the city was authorized to subscribe to the stock of the Ohio and Mississippi Railroad Company any amount not exceeding the sum of $500,000. An amended city charter also, entitled "An act to reduce the law incorporating the City of St. Louis and the several acts amendatory thereof into one act and to amend the same," approved March 3, 1851, contained the provisions above set forth, that "the city shall not at any time become a subscriber for any stock in any corporation"; and also the following: that "all acts and parts of acts contrary to and inconsistent with the provisions of this act, or within the purview thereof, &c., are hereby re-

pealed." These several acts took effect from their passage. It was held that the act of March 3, 1851, did not repeal the special enabling act of March 1, 1851, and that a subscription under the act of March 1, 1851, to the stock of the Ohio and Mississippi Railroad Company, made by the City of St. Louis, was authorized by law and valid, and the city thereby became a legal stockholder in said company. The court in its opinion says : "It is a rule in the construction of statutes that all acts passed on the same subject *in pari materia* must be taken and construed together, and made to stand if they are capable of being reconciled. There is nothing irreconcilable between a general prohibition to subscribe for stock in a corporation, and a permission to subscribe for stock in a particular corporation. Nothing is more common than a general prohibition with indulgence to particular individuals." Now both the acts under consideration refer to the same subject ; they are *in pari materia* and must be construed together, and effect and force should be given to both unless the repugnancy is irreconcilable. There is no such inconsistency between the acts that they may not both stand and be carried into operation. A general prohibition against subscribing for stock in any corporation may well subsist with a permission to subscribe for stock in a particular corporation. Besides, the 17th section of the general railroad law, with which the enabling act is supposed to conflict, uses no negative words. It uses words to express and permit future acts, and there is nothing to show that it intended to operate on existing or past laws even by implication. It was framed after the Constitution was adopted, and the conclusion is undeniable that it was intended simply to make the law conform to and carry out the 14th section of the 11th article of that instrument.

A question somewhat analogous on the subject of repealing acts was raised in this court in the case of the State ex rel. Vastine v. The Judge of the Probate Court, 38 Mo. 529. There the relator claimed the office of public administrator of St. Louis county by virtue of an election by the people at

the general election November, 1866, and the judge of the Probate Court refused to approve his bond and permit him to qualify on the ground that the law making the office elective was repealed, and that the power to appoint a person to fill the office was vested in him.   The law under which Vastine was elected was passed by the Legislature and approved March 3, 1857, and provided that at the next general election after the passage of the act, and every four years thereafter, the public administrator should be elected in certain counties including St. Louis, and that he should hold his office for four years and until his successor should be elected and qualified. The General Statutes declare, ch. 128, § 1, p. 515, that "each court having probate jurisdiction in any county may appoint a public administrator for its county, who shall have been a resident citizen of the county for one year previous to his appointment, and shall hold his office for two years and until his successor be qualified."  Ch. 224, § 6, p. 883, of the General Statutes provides that all acts or parts of acts of a private, local or temporary nature, or specifically applicable to certain particular cities or counties, in force on the first day of November, in the year 1865, not repealed by, or repugnant to the provisions of the General Statutes, shall continue in force or expire according to their respective provisions or limitations.   It was contended that § 6 of ch. 224 of the Gen. Stat. necessarily repealed the special law and vested the exclusive power of appointment in the court having probate jurisdiction ; but we decided that as no negative words were used, there was not such an inconsistency as would produce a repeal by implication and prevent both laws from standing together.

The next question to be considered is, does the clause in the Constitution referred to, apply to past as well as future acts ?   Was it intended to place an absolute inhibition on all subscriptions to stock in railroad companies, without regard to enabling acts passed before it went into effect, or does it merely prescribe a limitation on the future power of the Legislature ?   It is strongly insisted by the counsel for

30—VOL. XLI.

the respondent that this court has already passed on the subject in the case of the St. Joseph and Denver City R.R. Co. v. Buchanan Co., 39 Mo. 485; but this is founded on the misapprehension of the opinion delivered in that case. The point was not before the court and no decision was rendered upon it. It is true that the section of the Constitution was referred to *arguendo*, and in such a manner that the inference might well arise that in the opinion of the court the Constitution forbade all subscriptions unless a previous submission had been made to qualified voters in accordance with its provisions. But the only question in the case on which the Constitution had any bearing was the manner in which the matter was submitted to a vote. By an examination of the opinion it will be seen that the act was declared to be repugnant to the Constitution on another ground and for another reason. The enabling act authorizing and empowering Buchanan County to make subscriptions of stock to the railroad company, provided that before the County Court should have power to make the subscriptions the proposition should be submitted to a vote of the taxable inhabitants of the county, and a majority of the votes polled, for or against the proposition, should be valid and binding on the county. The order for an election was not made and the vote did not take place till after the new Constitution was adopted and had become the organic law of the land. Sec. 3 of art. 2 of the Constitution defines who shall be a qualified voter, and prohibits any other from voting at any election held by the people under the Constitution, or in pursuance of any law of this State, or under any ordinance or by-law of any municipal corporation. The order of the court submitting the proposition to be voted on by the people of Buchanan county attempted to conform to the provision of the Constitution as to qualified voters, and to the act of the Legislature as to taxable inhabitants, but really was not in compliance with either, and this was held to be illegal. This was the very point adjudged, and nothing more.—The clause in the Constitution prescribing the conditions on which counties

and corporate authorities shall be allowed to subscribe for stock in railway companies seems to have been transcribed from the Constitution of the State of Ohio. It has long been a recognized rule that when we import a law of another State into our own law, we also adopt the construction placed upon it by the courts of the State whence the law was derived. This very question has been before the Supreme Court of Ohio on several occasions and has received a uniform construction. In the first case, when the question came up (Cass v. Dillon, 2 Ohio, 607) the court was not unanimous, and Judge Ramsey delivered an able dissenting opinion, marked by sound logic and keen criticism. But the majority of the courts held that there was no such repugnancy between a law enacted before the adoption of the Constitution authorizing a subscription by a county to the capital stock of a railroad company, and the provision of the Constitution referred to ; that the section plainly referred to future legislation alone, and the acts it prohibited were not subscriptions under prior or existing laws, but the making of any more such laws. The same question was before that tribunal in the case of the State ex rel. Smead v. The Trustees of Union Township, 8 Ohio, 394, and the whole court concurred in declaring : " This provision, it will be observed, does not inhibit such subscription or issuing of bonds by virtue of *existing* laws ; it only prohibits the General Assembly *from passing such laws in future*, after the adoption of the new Constitution." And again : " It is however, upon this point of the case, sufficient to say, that we fully assent to the reasoning and conclusions of the majority of the court in the case of Cass v. Dillon, as expressed by the able and learned opinion delivered by Judge Thurman in that case. This court has had occasion at different times heretofore to carefully consider various objections urged to the constitutionality of statutes similar to those under consideration, and their constitutionality has been uniformly affirmed by the court. The validity of the acts of Assembly referred to, can therefore no longer be regarded by the court as doubt-

ful"—See also 1 Ohio, 77 ; id. 105 ; 6 Ohio, 518 ; 7 Ohio, 327. These decisions were all rendered before our Constitution was framed, and we must suppose that the members of the Convention who drafted that instrument were familiar with the construction given to the section in question. All the authorities that we have been able to consult coincide with the above views, and it is now too late to promulgate a different doctrine. The intelligent members of the constitutional Convention were certainly acquainted with the familiar rules which obtain in the construction of laws, both organic and statutory, and also understood the force and meaning of the English language. If they had intended that the 14th section of the 11th article should operate as a complete check and effectual bar against all subscriptions to stock in associations or companies under existing laws, they would have used words unequivocal in their meaning to carry out that intention. But the words used import a future and prospective operation only. This is abundantly manifest by the language they have used elsewhere when they intended not only to prohibit the future exercise of a power, but to inhibit any further acts under laws already in existence. As an example of this we will cite a single section, though it is not the only one of the same character to be found in the body of that instrument. Section 28 of article 4 is as follows : "The General Assembly shall never authorize any lottery ; nor shall the sale of lottery tickets be allowed ; nor shall any lottery heretofore authorized be permitted to be drawn or tickets therein to be sold." Here is not only a prohibition against an authorization of any future lottery, but a clear and effectual bar placed on those already in existence. The language is decisive and unambiguous, and evinces unmistakably that when the Constitution means to have a retroactive force, words and expressions are used plainly effectuating that object.

Upon the whole case, our conclusion is that the 14th section of the 11th article of the Constitution is a limitation on the future power of the Legislature, and was not intended to

retroact so as to have any controlling application to laws in existence when the Constitution was adopted; and as the County Court made the subscription of stock, the company is entitled to the bonds. Wherefore a peremptory mandamus is ordered. The other judges concur.