## Case No. 6,850.

### HUIDEKOPER v. DALLAS COUNTY.

[3 Dill. 171.] [1]

Circuit Court, W. D. Missouri. 1875. [2]

MUNICIPAL BONDS— CONSTITUTIONAL PROVISION— PRECEDENT VOTE—MACON COUNTY COURT CASE (41 Mo. 453) FOLLOWED.

Charters of railroad corporations existing at the date of the adoption of the constitution of Missouri of 1865, and which granted authority to counties to subscribe for the stock of railroads, and to issue bonds to pay for the same without a vote of the people, were not affected by the provision of the constitution (article 11, § 14), requiring a two-thirds vote: So held by the state supreme court in what is known as the Macon County Court Case, 41 Mo. 453, and which is followed by this court.

[See note at end of case.]

This is an action on coupons of bonds issued by Dallas county, to the Laclede and Fort Scott Railroad Company or bearer. The petition refers to the act under which the bonds were issued, alleges that for the subscription made the county obtained stock certificates which it still holds; that the county has exercised the rights of a stockholder; that it paid the three first installments of interest, but has failed to pay the coupons in suit on presentation. The defense is that the order of the county court making the subscription was without authority of law; that the issuing of the bonds was made dependent on conditions in the order of subscription, which conditions have not been fulfilled; that the order of subscription had been repealed before the bonds were actually issued. The reply denies all of the allegations of the answer. Plaintiff [Alfred Huidekoper] on trial read the order of the county court of August 5th, 1869, making the subscription and the amendments thereto, produced the bonds and coupons, dated July 1st, 1870, read from the record of the county court the appointment of the agent of the county to prepare the bonds, and directing the presiding justice and clerk to sign and seal the same, read the report of the county agent, showing the obtaining of stock certificates for bonds issued at various times, and the approval thereof by the county court, and various orders authorizing the borrowing of money to pay interest coupons as they become due. The only testimony offered by defendant is an order of the county court dated August 2, 1870.

Mr. Shippen, for plaintiff.
Ellis & Botsford, for county.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

KREKEL, District Judge. There is no inherent power in the county courts of Missouri to make railroad subscriptions, and hence the power must either be granted in the charter

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 154 U. S. 654, 14 Sup. Ct. 1190.]

of the company to which subscription is made, or must be found in the general law upon the subject. In the case before the court, power to subscribe is found in the 14th section of the act incorporating the Laclede and Fort Scott Railroad Company, approved Feb. 11th, 1860, in the following words: "It shall be lawful for the county court of any county in the state to subscribe to the stock of said company; and for the stock subscribed in behalf of the county may issue the bonds of the county to raise the funds to pay for the same, and to take proper steps to protect the interest of the county." [Laws Mo. 1859-60, p. 438.] Here then we have the power of the county court to subscribe without submission, and in the exercise of that power the county court of Dallas county on the 5th day of August, 1869, made and entered the following order upon its record: "It is ordered by the court that one hundred and fifty thousand dollars be, and the same is hereby, subscribed to the capital stock of the Laclede and Fort Scott Railroad Company for and on behalf and for the use and benefit of said county of Dallas." After providing the size of the bonds, the rate of interest, how and where to be paid, the order referred to exacts conditions as to the issue and delivery of the bonds as the work progresses, which conditions were afterward modified so that the bonds might be issued at once. There are no allegations of fraud in the issuing of these bonds, nor has there been any attempt made to show such fraud, but the objection is that the subscription was not submitted to a vote of the people. Provisions of law as to subscriptions of this kind are found upon the statute books of Missouri as early as 1837, and continued to be granted in a large majority of charters which were passed by the legislatures from time to time. The 30th section of the general railroad law of 1855 [Rev. St. 1855, p. 427], gives power to subscribe to railroads in the following words: "It shall be lawful for the county court of any county and the city council of any city, to subscribe to the capital stock of any railroad company duly organized under this or any other act in this state, and the county court or city council subscribing or proposing to subscribe to such capital stock, may, for information, cause an election to be held to ascertain the sense of the tax-payers of such county or such city, as to such subscription, and as to whether the same shall be paid by issue of county or city bonds, as the case may be, or by taxation." The act of January 14th, 1860 [Laws Mo. 1859-60, p. 88], changed the word "may" in the act quoted, to "shall." The act of March 23, 1861 [Laws Mo. 1860-61, p. 60], made it the duty of the county court or city council of any city, whenever satisfied that the people wanted to subscribe stock to any railroad company, to order an election, and if a majority of the resident qualified voters voted therefor, to subscribe such stock.

The second section of the last quoted act, provides that no subscription should be made unless the same had been voted for by a majority of the resident voters. Thus stood the law when the convention which framed the present constitution of the state met. The increasing interest in railroad improvements and the evasions of existing laws caused the enactment of a constitutional provision in the following words: "The general assembly shall not authorize any county, city or town to become a stockholder in or to loan its credit to any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent thereto." This provision would, no doubt, have prevented many unwise subscriptions for railroads, but for the existence of a very large number of charters at the time, and the opinion of the supreme court of Missouri, construing the constitutional provision as not applying to them. Many of these charters were by special enactment exempted from the provision of the general railroad law requiring submission, being, at the same time, authorized to build branches. The question as to the rights of the corporation under these charters came before the supreme court of Missouri at the October term, 1867, in the Macon County Court Case, 41 Mo. 453, and it was there held that it did not apply to them, and subscriptions could still be made to corporations having special charters, as stated, without submission.

To this doctrine the supreme court of Missouri has steadily adhered up to this time. Clark County Case, 54 Mo. 58. The construction of a special constitutional or statutory provision, given by the highest judicial tribunal of a state, is binding upon the federal judiciary, and has been applied in many similar cases determined at this term. It must be held, then, that the subscription made by the county court of Dallas county, under the authority of the provisions of the charter of the Laclede and Fort Scott Railroad to its stock, was valid and binding. The irregularities set up in the answer can not avail the defendant, a holder for value. The only one relied on is the order of the county court of August 2, 1870. It will be observed that the bonds and coupons bear date prior to this last mentioned order. Supposing, however, that the bonds were actually issued, as alleged in the answer, after August 2, 1870, could that avail the defendant? The court thinks not. In the first place the repealing order referred to is utterly ignored in the after proceedings of the county court, and treated as a nullity. But not only that, the county court proceeds to pay the interest from time to time, and may be said to have thus waived the irregularity, if such. Even if a fraud had been committed in the issuing of the bonds under those circumstances, an innocent holder is not affected thereby. The bonds must be held valid, and judgment will

be rendered for the plaintiff in the amount of the coupons sued on. Judgment accordingly.

[NOTE. The defendant appealed, but the supreme court, in an opinion delivered by Mr. Chief Justice Waite, affirmed the judgment below. (154 U. S. 654, 14 Sup. Ct. 1199), following County of Macon v. Shores, 97 U. S. 272, and Smith v. Clark Co., 54 Mo. 59.]